IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SERGIO VILLARREAL LOPEZ,

       Petitioner,

v.                                    CIV 03-263 BB/KBM

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

       Respondent.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## I.  Factual & Procedural Background

### A.  Original Entry Into United States And Attempts To Apply For U.S. Citizenship

Although the record before me does not contain a complete copy of the Immigration and Naturalization Service ("INS") files for Sergio Lopez, I believe the record contains sufficient information to analyze the issues before me.

Lopez is a Mexican national, but has lived in the United States for most of his life.  He was born in Mexico on February 18, 1963 and arrived in the United States with his family at age three.  *See Doc. 2* at 1 (OMB form 43 dated 8/24/80)[1]; *see also Doc. 8,* Exh. 9.  As a teenager, he submitted an "N-400" form to the Immigration and Naturalization Service ("INS") in an attempt to gain United States citizenship.  The INS rejected the application noting that because Petitioner was then under age eighteen, he "must have at least one citizen parent to file naturalization" on

---

[1]  The way Petitioner designated his exhibits to this pleading is confusing, so I will refer to them by a description.

his behalf.  Because he did not show any proof that one of his parents was a citizen, the INS rejected his application.  The rejection form did advise that Lopez could resubmit a N-400 after his eighteenth birth date.  *See Doc. 2* (INS form N-14 dated 6/4/79).

Petitioner's father became a citizen on February 5, 1980.  *Id.* (Juan Lopez naturalization certificate).  Petitioner again applied for citizenship and once more his N-400 form was denied because he applied himself while under age eighteen rather than having his citizen parent apply on his behalf.  The  rejection form directed Lopez to have a citizen parent "complete the enclosed N-402 and return to our office with this letter attached to it."  *Id.* (INS form N-14 dated 6/18/80).

Two months later, on August 24, 1980, Petitioner's father partially completed an "Application To File Petition For Naturalization In Behalf Of Child."  *Id.* (OMB form 43, dated 8/24/80).  The affidavit portion of the form, where applicants are instructed ***not*** to write, is not executed.  *Id.* (OMB form 43 dated 8/24/80).  There is no question, however, that the INS received the document and put it in petitioner's "alien file."   A senior immigration inspector later so noted.  *See Doc. 8,* Exh. 11 at 2 ("The A-file does contain a partially completed N-402 dated August 24, 1980.  It is not known when this document was received by INS.").

Apparently nothing happened with the application until after Lopez' eighteenth birthday.  The inspector, for example, noted that Lopez' file also "contains what appears to be a notice of personal data, a list of two witnesses, and a change of address submitted by [Lopez] to INS. . . . received by INS on May 13, 1981."  *Id.*  The inspector stated that on the day Petitioner took the additional documents to the INS, the file shows "Examiner's notes . . . requesting that the file be transferred to Los Angeles for jurisdictional reasons."   Of course, as of that date Lopez was eighteen years of age and no longer eligible for naturalization as a child of a citizen parent.

2

*Doc. 8,* Exh. 11 at 2.  In the words of the inspector:

> It appears that no further action was taken by INS with regard to [Lopez'] application for naturalization.  There is no evidence in the A-file that the defendant's petition for naturalization was approved.  There is no evidence in the A-file that [Lopez] is a United States Citizen, naturalized or otherwise.

*Id.*

### B.  Adult Criminal & Personal History

Petitioner's adult life commencing at age twenty-one is full of intoxication charges as well as aggressive-type crimes, such as fighting and battery.  *See Doc. 8,* Exh. 3 at 8.  He has two daughters from two different women and was married to one of the women, but lived with her only for two years.  Thereafter, he began a living with a girlfriend and her ten-year old daughter from a previous marriage.  The record does not establish whether Petitioner's wife or his daughters are United States citizens.  Lopez does allege that his parents, daughters and siblings still reside here.  *See Doc. 9* (conclusion section).

### C.  1996 Conviction For Sexual Battery

In March 1996 when Lopez was thirty-three years old, the State of California charged him with one count of lewd acts upon a child in violation of § 288(A) of the penal code, that is, fondling his girlfriend's daughter.[2]  *See Doc. 8,* Exh. 1; *id.,* Exh. 3 at 11.  The information charging the crime specifically noted that a "lewd acts" violation is considered as a "serious"

---

[2]     Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment.

CAL. PENAL CODE § 288(a).

felony for which no plea bargaining was permitted,[3] and, if convicted, Lopez would have been

required to register as a sex offender under § 290 of the penal code.  *See id.,* Exh. 1.

At a pretrial conference on April 18, 1996, the State moved to amend the information to

include a second count.  The second count alleged that the same conduct constituted a felony

"sexual battery" in violation of § 243.4 of the penal code.[4]  During the conference, Lopez entered

a plea of guilty to the second count on the conditions that the court grant him "felony probation"

and review his probation after one year to consider whether to reduce the felony "to a

misdemeanor."   Both the court and the district attorney accepted the plea, and the matter was

referred to the probation office for a "report and sentence on May 16, 1996."   At the sentencing

hearing, the court adopted the probation officer's recommendation, and, among other things,

required Lopez to abstain from using or possessing alcohol or drugs, imposed a suspended five-

year sentence, and required Lopez to begin serving a term of 180 days in jail as of June 14, 1996.

*Id.,* Exh. 2.

While serving his 180-day sentence, Petitioner was permitted to continue working at his

job on a "work furlough program" and was due to be released from the program on September 1,

1996.  *See Doc. 8,* Exh. 3 at 2; *id.,* Exh. 6 at 2.  On August 15, 1996, however, he returned to the

---

[3]  *See* CAL. PENAL CODE § 1192.7(a) ("Plea bargaining in any case in which the indictment or information charges any serious felony . . . is prohibited, unless there is insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence.); *id.,* § 1192.7(c)(6) ("As used in this section, 'serious felony' means any of the following: . . . lewd or lascivious act on a child under the age of 14 years.").

[4]  *See* CAL. PENAL CODE § 243.4(A) ("Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery.").

jail with alcohol on his breath, tested positive for alcohol, and admitted to drinking after work

with a friend who had bought beer from him.  *Id.,* Exh. 6 at 2-3.  On September 17, 1996, the

state court revoked probation, imposed a four-year sentence for the sexual battery felony and

remanded Lopez to the custody of the sheriff.  *See id.,* Exhs. 7-8.

### D. 1998 Deportation, 1999 Illegal Reentry, Motion To Reopen Prior Deportation Order

In July 1998, Petitioner was released from state prison to the custody of the INS in San

Jose.  *See Doc. 2* (INS memo to file dated 7/14/98).  According to an INS agent internal

memorandum, the agent reviewed Petitioner's file and noted the citizen parent application that

was never acted upon.  During the agent's interview with Lopez, however, Petitioner "stated he

was a Mexican citizen."  *Id.*  Petitioner gave the agent some "documents" during the interview,

which documents those were or what the interview entailed is unclear from the memorandum.

On August 4, 1998, the INS issued a notice to Lopez that he was not a United States

citizen or national and was subject to removal based upon his conviction for the aggravated felony

of sexual battery.  *Doc. 8,* Exh. 9.  After holding a hearing on August 17, 1998, which Petitioner

attended, Immigration Judge William L. Abbott of the Immigration Court in Eloy, Arizona

ordered Petitioner removed to Mexico.  *Id.,* Exh. 10; *see also Doc. 2* at 2 ("Lopez states he "went

to an Immigration Hearing on August 17, 1998").  The judge's order shows that Petitioner

waived any appeal, and, indeed, Petitioner was deported immediately after the hearing.  *Doc. 8,*

Exh. 10; *see also Doc. 2* at 2 ("deported to Mexico on August 19, 1998.").

Petitioner did not stay gone long.  According to his own account, in May 1999, he illegally

reentered the United States, was caught at the border in Texas, convicted of that offense, and

sentenced to fifty-seven months in federal custody.  The judgment and sentence is not part of the

record.  Assuming that Lopez began serving his sentence in June 1999 and that he has received no credit for time served or good-time behavior, the sentence will expire sometime in Spring 2004.

While housed in a Texas federal facility, Lopez wrote to the INS in February 2001.  It is not clear from this record what triggered the correspondence, for example, whether the INS issued a notice of intent to reinstate his prior deportation order.  Lopez took the position that because his father is a United States citizen, he too is a United States.  The INS informed him that because both of Lopez' parents did not become citizens before he turned eighteen, his claim to citizenship had no merit.  *Doc. 2* (INS letter dated 3/12/01).

A year later, Lopez filed a Motion to Reopen his prior removal proceeding.  At this point he was incarcerated in a New Mexico prison.  Again, it is not clear from this record what triggered the motion.  *See id.* (memorandum decision dated 5/2/02); *see also id.* (INS form notice of decision dated 5/3/02) .  The same Immigration Judge who presided over the original removal proceedings denied the motion for two reasons.  First, Petitioner did not meet all of the requirements of 8 C.F.R. § 3.23(b).  Second, Petitioner was an "alien who has already been deported from the United States."  *See id.* (memorandum decision dated 5/2/02 at 2)  For those reasons, the Immigration Judge concluded that he lacked subject matter jurisdiction over the motion.  *Id.*

### E.  Failure To Exhaust BIA Remedy & The Instant § 2241 Petition

The form notice of decision accompanying Immigration Judge Abbott's decision specifically advised Petitioner that he had thirty days in which to appeal to the Board of Immigration Appeals ("BIA") and provided the address for the BIA.  *Id.* (INS form notice of decision dated 5/3/02).  Nothing in the record indicates that Petitioner did so.

6

Instead, within one year of Immigration Judge Abbott's decision, Lopez petitioned this court under 28 U.S.C. § 2241.  He challenges the prior deportation order and raises three claims, evidently the same three claims he wished to raise had the INS proceedings been reopened.  He first contends that he is a United States "national" by virtue of the citizen parent application filed by his father that the INS never processed.  He next contends that the sexual battery conviction does not constitute an "aggravated felony."   His final claim is that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") were not in effect when he was convicted and, therefore, he should be given the opportunity to have the old citizenship application processed or to apply for § 212(c) relief.[5]

I find that this Court has no jurisdiction to hear the two threshold issues that must be resolved by the United States Court of Appeals for the Ninth Circuit before any court can entertain Petitioner's § 212(c) claim.  As such, I recommend that this case be transferred to the Ninth Circuit pursuant to 28 U.S.C. § 1631.

## II.  Analysis

A federal court is under a continuing duty to determining its jurisdiction over any matter. Therefore, I must *sua sponte* evaluate whether this action is properly brought under § 2241 in the District of New Mexico federal court.

By means of his motion to reopen, Petitioner is attempting to resurrect and challenge the

---

[5]  Under § 212(c) of the Immigration and Naturalization Act of 1952 (since repealed),  "the Attorney General was authorized to waive deportation of a permanent resident who had lawfully resided in this country for seven years and had not served more that five years of imprisonment on a conviction for an aggravated felony."  *United States v. Aguirre-Tello*, 324 F.3d 1181, 1189 (10th Cir. 2003).

substance of the 1998 decision that he is deportable.  Plainly, he wants this Court to intervene and

have the INS reconsider his status as an alien who committed an aggravated felony.  *See Doc. 2*

(relief requested includes: "that this court to remand this case back to the IJ for a hearing and

adjudication of all said issue[s] discussed in this motion;" "asks the court to rule that petitioner is

considered a "NATIONAL' of the U.S. and therefore cannot be deported from the U.S. this case

should be rem[a]nded back to the BIA and INS for adjudication of this claim").   His § 2241

petition, therefore, should be construed as one for judicial review of an order of deportation.  So

construed, this leads me to the first jurisdictional problem.

   Statutorily, judicial review of orders of removal is lodged with the federal courts of

appeal, not the federal district courts.  *See* 8 U.S.C. § 1252(a)(1); *see also e.g., Immigration and*

*Naturalization Serv. v. St. Cyr,* 533 U.S. 289, 311 (2001) ("'[j]udicial review of a final order of

removal . . . is governed only by' the Hobbs Act's procedures for review of agency orders in the

courts of appeals.") (*quoting* 8 U.S.C. § 1252(a)(1) (1994 ed., Supp. V)).  If, as here, a petitioner

failed to exhaust administrative remedies with the BIA, traditionally that meant the courts of

appeal had no jurisdiction to hear the matter.  *See* 8 U.S.C. § 1252(d)(1) (final order of removal

reviewable only if "alien has exhausted all administrative remedies"); *see also e.g., Akinwunmi v.*

*Immigration & Naturalization Serv.,* 194 F.3d 1340, 1341 (10th Cir. 1999); *Rivera- Zurita v.*

*Immigration & Naturalization Serv.,* 946 F.2d 118, 120 n. 2 (10th Cir. 1991).  Because the INS

decisions in this case originated in Arizona, the Ninth Circuit is the proper court for review.  *See*

*e.g.,* 8 U.S.C. § 1252(b)(2).

   Furthermore, the courts of appeals are statutorily limited in what they can review.  Cases

refer to certain statutory provisions as "jurisdictional-stripping" provisions, and I adopt the same

8

shorthand description here.  For example, if a alien illegally reenters this country after deportation, which Petitioner concedes he did, and the INS reinstates his or her prior order of removal, then the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed."  8 U.S.C. § 1231(a)(5).  Traditionally, this means that the federal courts of appeal do not review the prior order of removal but instead review the final order of *reinstatement* and determine whether the *reinstatement* procedure comports with due process.  *E.g., Alvarenga-Villalobos v. Ashcroft,* 271 F.3d 1169, 1175 (9th Cir. 2001); *see also Salazar v. Ashcroft,* 38 Fed.Appx. 812, 813 (3rd Cir. 2002) (citing published decisions from 4th, 5th, 6th, 8th, and 9th circuits).  Because neither Petitioner nor Respondent indicate that the INS has issued a notice of intent to reinstate, much less a final order of reinstatement, one could construe Petitioner's claims as premature.

Under the statutory language, this Court would lack jurisdiction generally over the petition even if it were not premature.  The question is whether Petitioner can circumvent the above hurdles by filing a petition for a writ of habeas corpus with this court.  Read very broadly, the two recent Supreme Court decisions in *Calcano* and *St. Cyr,* appear to say he can.  For example, both cases recognize that Congress did not speak with sufficient clarity in enacting many of the INS provisions, such that leaving petitioners without some forum for adjudicating their claims raises constitutional concerns.  Thus, § 2241 remains an available avenue for seeking relief.  *See Calcano-Martinez v. Immigration & Naturalization Serv.,* 533 U.S. 348, 351 (citing *St. Cyr,* 533 U.S. at 314).

A very recent Tenth Circuit opinion involving a case from this district could be read broadly as permitting collateral relief, such as § 2241, to challenge a prior order of deportation.

*See United States v. Aguirre-Tello,* 324 F.3d 1181 (10th Cir.  2003).  The case arose in a different procedural posture - the Honorable Martha Vázquez dismissed an indictment charging the defendant with illegal reentry on the basis that his deportation hearing was fundamentally unfair because of the failure of an Immigration Judge to advise the prospective deportee of his right to § 212(c) relief.  In affirming, the Tenth Circuit explained:

> finding as we do in defendant's favor on the primary issue--that his due process rights were violated by the failure to give an adequate explanation of the discretionary relief available to him--the nature of this error was such as to deprive him of his right to any appeal, whether administrative or judicial, and that a deprivation resting on such a ground cannot bar his collateral attack in this proceeding. Thus, we reject the government's contention that defendant's collateral attack is barred by the failure to exhaust administrative remedies.

*Id.* at 1189.

Nevertheless, courts of appeal retain jurisdiction to determine threshold "jurisdictional-stripping" issues.  Two of Lopez' claims, that he is a citizen and that sexual battery is not an aggravated felony, are precisely such issues over which the courts of appeals retain jurisdiction. *E.g., Calcano-Martinez,* 533 U.S. at 350 & n.2; *Francis v. Reno,* 269 F.3d 162, 165 & n.2 (3rd Cir. 2001); *Zavaleta-Gallegos v. Immigration & Naturalization Serv.,* 261 F.3d 951, 954 & n.3 (9th Cir. 2001); *Trejo-Haro v. Jeffers,* CIV 01-1171 MV/KBM (*Doc. 2,* order of transfer to Ninth Circuit dated 11/30/01 at 3 & n.5).

Section 212(c) is implicated because Lopez pled guilty just days before AEDPA went into effect and was not deported until after the IIRIRA amendments.  *See St. Cyr,* 533 U.S. at 314.  If he is an "alien" and committed an "aggravated felony," then Lopez has standing to raise a § 212(c) claim.  If he is found to be a United States citizen, or if he is found to be an alien but that

his sexual battery conviction does not constitute an "aggravated felony," then Lopez could not raise a § 212(c) claim.  Only if the Ninth Circuit finds that Lopez is both an alien and committed an aggravated felony would Lopez begin to have a basis to raise the § 212(c) issue.  *See Aguirre-Tello*, 324 F.3d at 1187.  Then, assuming there are no further procedural or waiver issues barring consideration of the claim under § 2241, the inquiry will include what transpired on the record at the first removal hearing and whether there is a "reasonable probability that [Lopez] would have obtained relief from deportation had the Immigration Judge properly advised him about the waiver's . . . availability as a recourse he could invoke."  *Id.* at 1193-94; *see also Doc. 7* at 19-24 & n.8 (and discussion therein).

Wherefore,

**IT IS HEREBY RECOMMENDED** that this case be transferred to the Ninth Circuit pursuant to 28 U.S.C. § 1631.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE